Argued February 25, reversed March 30, rehearing denied May 11, 1926.

JACKSON COUNTY *v.* WILLIAM ULRICH ET AL.

(244 Pac. 535.)

Taxation—Under Statutes, County Court Representing County had Power and Authority to Settle Tax Controversy With Taxpayer and Compromise Matter in Interest of County (§§ 937, 938, 3191, Or. L.).

1. Under Sections 937, 938, 3191, Or. L., County Court representing county had power and authority to settle and compromise with taxpayer controversy as to assessment, where there was grave legal doubt in regard to the validity of the assessment, in that taxpayer had no knowledge of the assessment in time to present the matter to the board of equalization.

Counties—Power of County, as Body Politic, to Sue and be Sued and to Make All Necessary Contracts in Relation to Affairs of County, Includes Authority for County Court as County's Agent to Prevent Litigation by Compromise and Settlement (§§ 937, 938, 3191, Or. L.).

2. The general power of the county as a body politic, under Section 3191, Or. L., to sue and be sued, and to make all necessary contracts and do all other necessary acts relative to property and concerns of county by a fair interpretation, includes authority for the County Court as its agent under Sections 937, 938, to prevent litigation by a compromise and settlement of disputed matters of the county.

Taxation—Taxpayer Disputing Assessment is not Required to Pay Tax Demanded by Sheriff and Then Apply for Repayment of Excess Tax Under Statute (§ 4386, Or. L.).

3. Taxpayer who disputes assessment *held* not required to pay tax as demanded by sheriff and then apply to County Court for an order directing issue of county warrant for repayment of excess tax under provisions of Section 4386, Or. L., inasmuch as such law applies only in case of an excess tax charged against assessable property, and does not provide a remedy in cases where the validity of assessment is disputed.

Counties, 15 **C. J.**, p. 456, n. 49.

From Jackson: C. M. THOMAS, Judge.

Department 2.

The plaintiff brought regular tax foreclosure proceedings against defendant Ulrich, and several others, upon various certificates of delinquency, including one against the property of defendant Wm. Ulrich, upon an assessment made for taxes upon certain personal property for 1918, including "one automobile, one head of cattle and one dog," assessed at $270, upon which defendant Ulrich paid the taxes. With the assessment, the assessor included the following items of personal property, to wit: money, bonds, warrants, stocks, mortgages, notes and accounts in the sum of $3,000, the tax upon which amounted to $121.20.

2. See 5 **R. C. L.** 886; 26 **R. C. L.** 377.

The defendant, in his answer, after setting forth the above facts, alleged in substance that he was not the owner of any of such property at said time and was not properly assessed therewith, and the assessment was made without any authority, without his knowledge, and that the assessment was wrongful and illegal.

On December 6, 1922, this defendant submitted the matter to the County Court of Jackson County, sitting for the transaction of county business, and made an affidavit in writing relative to said tax, a copy of which affidavit is attached to the answer, for the purpose of compromising the matter, and offered $100 in full settlement of said tax and all penalties, interest and costs.

On January 5, 1923, the County Court of that county, sitting for the transaction of county business, accepted the offer and directed the sheriff to accept the $100 in full settlement of the matter, clearing the rolls of such tax. The sheriff refused to accept $100 tendered, or to comply with the order, and this suit resulted.

The defendant tendered in the Circuit Court the sum of $100 with his answer. The plaintiff demurred to the answer upon the ground that the same did not state facts sufficient to constitute a defense. The trial court sustained the demurrer, and this defendant declining to plead further, a decree was entered, foreclosing the certificate of delinquency on certain real property of defendant. Defendant Ulrich appealed.          REVERSED.   REHEARING DENIED.

For appellant there was a brief and an oral argument by *Mr. Frank J. Newman.*

118 Or.—4

For respondent there was a brief and oral argument by *Mr. Newton C. Cheney,* District Attorney.

BEAN, J.—The main question in the case is the contention made by the district attorney on behalf of plaintiff, that the County Court had no legal authority to enter into the agreement for a compromise of the tax matter.

Each county of the state is a body corporate, having certain prescribed powers. Among these is the power "to sue and be sued; to make all necessary contracts, and do all other necessary acts in relation to the property and concerns of the county": Section 3191, Or. L. All actions, suits or proceedings by or against a county are in the name of such county, but it is represented by the County Court, and such court has authority and power to control and direct the proceeding therein, as if it were plaintiff or defendant, as the case may be: Section 938, Or. L.

The County Court, by virtue of Section 937, Or. L., has the authority and power pertaining to county commissioners to transact county business. The subdivisions of this section specify, among other things, the following:

"To estimate and determine the amount of revenue to be raised for county purposes, and to levy the rate necessary therefor, together with the rate required by law for any other purpose and cause the same to be placed in the hands of the proper officer for collection;                .

"(9) To have the general care and management of the county property, funds and business, where the law does not otherwise expressly provide;

"(10) To compound for, or release in whole or in part, any debt or damages arising out of contract due the county, and for the sole use thereof, upon such terms as may be just and equitable."

1. According to the averment of the answer, the tax upon money, bonds, etc., against defendant Ulrich had no foundation upon which to base the assessment. This defendant had no knowledge of the assessment in time to present the matter to the board of equalization.   There was a grave legal question in regard to the validity of the tax.   Under the circumstances, delineated in the record, and in order to endeavor to prevent litigation against the county, which must, if the facts stated in the affidavit filed with the County Court and in the answer herein are true, eventually result adversely to the county, the County Court sitting for the transaction of county business had the power and authority to settle the controversy and compromise the matter in the interest of the county. Such action in regard to an apparent tax would fairly come within the "general care and management of the county property funds and business," especially when this clause is considered in connection with the other provisions of the statute, providing, in effect, that the County Court sitting for the transaction of county business shall have control and direct the business and litigation of the county.

2. The power of the county, as a body politic, can only be exercised by the county judge and commissioners sitting for the transaction of county business, or by a board of county commissioners, and the general power "to sue and be sued; * * to make all necessary contracts and to do all other necessary acts in relation to the property and concerns of the county," by a fair interpretation, includes authority for the County Court, as the agent of the county acting in good faith and for a valid reason, to prevent litigation by a compromise and settlement of disputed matters of the county.

The members of the County Court in performing such functions act in a similar capacity as a board of directors, or managing agents of the corporation. The county of Jackson is a party to the suit. Under the statute it is represented by the County Court, which had authority to direct the proceedings in the case, just as if the court were plaintiff. It would not be in furtherance of the legislative will, as expressed in the statute, to so construe the law, so as to hold that although the County Court could control the proceedings after suit was instituted, it was powerless to adjust the matter before a suit was commenced and costs entailed. In other words, the greater authority would necessarily include the less. When we remember the multitude of affairs of the county, within the care and management of the County Court, it would not be expedient to detail them all in the statute, conferring power and authority over them upon the County Court: *Multnomah County* v. *Title, Guarantee & Trust Co.*, 46 Or. 523 (80 Pac. 409); *Multnomah County* v. *First Nat. Bank* (Or.), 82 Pac. 23; *Multnomah County* v. *Dekum,* 51 Or. 83 (93 Pac. 831, 16 Ann. Cas. 933). The principle involved is not a new one. The case of *Multnomah County* v. *Title Guarantee & Trust Co., supra,* involved a compromise settlement between the county and a certain property owner, relating to a large amount of tax certificates held by the county and accruing taxes, part of which was in litigation at the time of the compromise and a portion was not. In a full discussion of the matter, former Mr. Justice BEAN said, among other things, at page 531 of the Report (80 Pac. 411):

"In making the settlement the county commissioners were not acting as a court, but as a mere

financial or business agent of the county; and the contract actually made by them with the defendants, if they had power to make it, is binding, in the absence of fraud, although it may include matters outside the proposition of Ross and the pending litigation. * * County commissioners, in transacting the business of the county, and in the care and management of its property and funds, do not act as a court, but as a financial or managing agent of the county, precisely as an agent of a private corporation in the management of its financial concerns, and all contracts made by them within the power conferred are subject to the same rules: *Stout* v. *Yamhill County,* 31 Or. 314 (51 Pac. 442); *Frankl* v. *Bailey,* 31 Or. 285 (50 Pac. 186) * * . In making the contract of settlement, therefore, the board of commissioners were dealing with property rights belonging to the county, and which were in dispute and litigation. It is difficult to discover any legal principle which will deny to them the power to compromise and settle such a controversy, when, in their judgment, the best interests of the county require it.''

In *Multnomah County* v. *Dekum,* 51 Or. 83 (93 Pac. 821, 823), we find the following language of Mr. Justice MOORE, recorded at page 87 of the Report:

"The complaint was undoubtedly framed on the assumption that the officers of a municipal corporation were powerless to effect a valid compromise and settlement whereby any part of a burden represented by certificates issued to a county on account of the sale of property for delinquent taxes, could be remitted. This question having been settled adversely to such theory (*Multnomah County* v. *Title Guarantee & Trust Co.,* 46 Or. 523 [80 Pac. 409]), the only ground, therefore, on which a decree for the plaintiff could be based, is the alleged failure of the trustee to impart the information which he possessed, and that is insufficient.''

See, also, *Franklin Co.* v. *Carstens,* 68 Wash. 176 (122 Pac. 999).

3. It would have been a simple matter for the sheriff to have made a red ink memorandum on the tax-rolls, pursuant to the order of the County Court. The interest of the county demands that such adjustment some time be made. The district attorney contends, on behalf of plaintiff, that the remedy of defendant Ulrich was to have paid the tax as demanded by the sheriff, and then to have applied to the County Court for an order directing the issue of a county warrant, for the repayment of an excess tax under the provisions of Section 4386, Or. L. That section applies when a sum has been collected in excess of the tax charged against assessable property. It does not provide a remedy in a case like the one in hand. A taxpayer of a county ought not be required to pay, as a tax, more than is legally due, and then take measures to collect the excess tax.

If the tax matter in the present case had not been compromised as averred in the answer, we doubt if a court of equity would foreclose a delinquent tax certificate based upon a tax illegally assessed, as set forth in the answer of this defendant.

The decree of the lower court is reversed, as to defendant Ulrich, and the demurrer to his answer is overruled. The cause will be remanded for such further proceedings as may be deemed proper, not inconsistent herewith.

REVERSED AND REMANDED.    REHEARING DENIED.

McBRIDE, C. J., and BROWN and BELT, JJ., concur.