Argued March 4, affirmed April 8, 1959

## DAVIDSON BAKING COMPANY, an Oregon Corporation *v.* JENKINS et al

337 P. 2d 352

*Wilber Henderson,* Portland, argued the cause and filed a brief for appellant.

*Raymond G. Wood,* Oceanlake, argued the cause and filed a brief for respondents.

ON THE BRIEF AS AMICI CURIAE WERE:

W. W. Balderree, City Attorney of Brookings, Grants Pass.

John C. Caldwell, City Attorney of Estacada, Oregon City.

Dale E. Helikson, City Attorney of Lowell, Oakridge.

Marshall C. Hjelte, City Attorney, St. Helens.

Frank C. Meldrum, City Attorney, Myrtle Point.

Robert Thomas, City Attorney of Empire, North Bend.

Before MCALLISTER, Chief Justice, and LUSK, PERRY, SLOAN and CRAWFORD, Justices.

CRAWFORD, J. (Pro Tempore)

Plaintiff appeals from judgment on order sustaining demurrer to its third amended complaint, electing to stand on the pleading.

The suit challenges the validity of Ordinance No. 6 of the City of Oceanlake, enacted April 17, 1946, entitled:

"An ordinance pertaining to the granting of licenses with the object of receiving revenues or of providing regulation, or both; fixing the amount of license fees thereof; providing the method of collection thereof; providing the method of applying for and issuing of licenses; providing for the constitutionality thereof; providing penalties for the violation hereof, and declaring an emergency."

Pertinent portions of the questioned ordinance may be digested as follows:

Section 2. Requires a license from any person who conducts, carries on, or practices any *business,* trade, occupation, profession, or calling within the city of Oceanlake.

Section 3. Requires such license as indicated in Sec. 2 "*Except* as hereinafter provided." (Exceptions appear in Sec. 10.)

Section 8. This states such license fees "* * * are for the purpose of *raising revenues* as well as for the purpose of *regulation,* and that any and all license fees required hereby shall be considered reasonable and legal for the purpose of raising revenues, regardless of the cost of regulation." (Italics ours.)

Section 10. "Exceptions. The provisions of this ordinance shall not be deemed to require a license

for each separate business, trade, occupation, calling or profession when said business, trade, occupation, calling or profession is conducted incidental to and as a part of any general business, trade, occupation, calling or profession for which a license has been issued hereunder.  *  *  *"

Section 21. Defines bakeries and bakery distributors and requires a license from any person engaged in the "business" of operating or conducting a *bakery* or the "business" or occupation of *bakery distributor.*

The third amended complaint alleges in substance; that plaintiff is engaged in the business of baking bread and bakery products and distributing the same and continues in Paragraph III:

"That long prior to the institution of this suit, various retail merchants operating in the City of Oceanlake gave orders to an agent of the plaintiff other than the driver hereinafter referred to for the purchase of its products to be delivered periodically as required, and in pursuance thereof, for several years last past, plaintiff has effected such periodic deliveries to such retail merchants of the City of Oceanlake by motor trucks licensed to, and operated by, plaintiff and its agents and employees; that said truck is propelled through the use of motor vehicle fuel; that the quantity of products that plaintiff delivers to the retail merchants as aforesaid is determined by the needs or the requirements of such merchants ascertained by the driver of the truck at the time of making such deliveries through an inspection by such driver of the merchandise said merchant has on hand of the kind manufactured by plaintiff; that in some instances, the retail merchants make periodic payments to plaintiff at its Portland office, covering the aggregate amount due for deliveries theretofore made over an indefinite period of time; that in other instances, drivers of plaintiff are paid by the

retail merchants the sales price at the time the deliveries are made; * * *."

Plaintiff pleads the "charter" of the city of Oceanlake upon which the city's action was based was adopted through an initiative proceeding at an election held November 3, 1945, and continues with the substance of the act of incorporation as follows:

## "OFFICIAL BALLOT

for the incorporation of the city of Oceanlake, Lincoln County, Oregon, November 3, 1945. * * * Shall that portion of Lincoln County, State of Oregon described as [then the description] be incorporated as a municipal corporation to be known as the City of Oceanlake."

Thereafter and on August 9, 1949, a charter was approved at a special election.

There are four assignments of error. In substance these question "charter" or any authority for enactment of the ordinance, reliance of the trial court on ORS 221.916 "* * * since said ordinance is a revenue measure", lack of uniformity violating Section 20 of Article I of the Oregon Constitution and error in finding plaintiff's activities constituted "engaging in business" in the city.

■■ Assignment of Error No. 1. The court should have found a lack of authority for the enactment of the ordinance. Although, as stated, plaintiff's complaint alleges that "the charter of the City of Oceanlake * * * was adopted through an initiative proceeding," it is contended that in fact the city has no charter and therefore no powers, that the voters in the territory did no more than "indicate that a certain area thereafter was to be known as 'Oceanlake'." The proceedings for incorporation of Oceanlake were taken pur-

suant to Oregon Laws 1941, ch 453, codified as ORS 221.020. Predecessors of that statute were Oregon Laws 1893, p 119, and Oregon Laws 1913, ch 345. These statutes contained provisions to the effect that when the prescribed procedure had been complied with, the inhabitants of the city should have and exercise the powers conferred upon it in the act or that might be conferred upon it by law. See Oregon Laws 1893, p 123; Oregon Laws 1913, ch 345, Sec. 6. There is no identical provision in the 1941 act. It is argued that, as a result of the omission of the former provisions from the 1941 act, incorporation under that act produces nothing but a municipality devoid of power to function. But as will be presently pointed out, the 1941 act does contain a general grant of power amply sufficient for the enactment of the ordinance in question. The complaint aptly referred to the "charter" of the City of Oceanlake, for a charter is the organic law of a city. *Joplin v. Ten Brook et al,* 124 Or 36, 39, 263 P 893, and it is no less the organic law because it is contained in a general statute. That it is not inappropriate to refer to such a statute as a charter, see *State ex rel Shawano v. Engel,* 171 Wis 299, 302-303.

Plaintiff bases his argument upon the proposition "* * * that unless there can be found in the charter of the city of Oceanlake the authority to enact or adopt Ordinance No. 6, the same is without force and effect." Plaintiff continues:

"Our problem, therefore, is to find out if in the general laws of Oregon on November 3, 1945, there are any provisions that will convert into meaning the action taken by the electors of Oceanlake quoted as above. * * * Apparently, the general statutory law of the State of Oregon as of November 3, 1945, which related to municipal corporations

consisted of an act of the legislature of 1893 * * * as amended by Chapter 453 of the Laws of 1941."

And plaintiff continues with the observation, "The nearest approach to any language in the chapter showing an intent to confer power is Section 5 of Chapter 453 of the Laws of 1941," which has been codified as ORS 221.410. The first subsection of this section reads, as follows:

"(1) Except as limited by express provision or necessary implication of general law, a city may take all action necessary or convenient for the government of its local affairs."

Article XI, Section 2 of the Oregon Constitution provides for the formation of corporations under general laws while prohibiting their creation by the legislative assembly by special laws. In *Wilson v. City of Medford,* 107 Or 624, 215 P 184, p 191, this court stated:

"The whole sum of intramural power is set at large by the state Constitution * * * (Article XI, Section 2) and the legal voters of any city may, by amending their existing charter or by the enactment of a new charter, reach out and take either all or only a part of that whole sum of power: * * *"

In *State v. Gilbert,* 66 Or 434, 134 P 1038, this court held this article of the Constitution did not infringe on the right of the legislature to make general laws for the formation of corporations. However, plaintiff questions the right of a city to operate without having adopted a charter. In construing the Incorporation Act of 1893 this court has held a city may function under a legislative act even without a charter since the act itself prescribed the powers that might be exercised by a city incorporated pursuant to its terms. *State ex rel Cutlip v. North Bend,* 171 Or 329,

137 P2d 607. And in *Rose v. Port of Portland,* 82 Or 541, 162 P 498, this court held "Charters or laws granting or enumerating the powers exercisable by a corporation are indispensable."

In *Portland Baseball Club v. Portland,* 142 Or 13, 17, 18 P2d 811, it is stated:

"* * * yet the council is not bound to look to the charter alone for its authority, for it may also exercise such additional powers as are conferred upon it by a general statute applicable alike to all incorporated cities within the state."

And from *Albany v. McGoldrick,* 79 Or 462, 155 P 717:

"It is part of an act passed in 1893 (Laws 1893, p. 119), entitled 'An act for a general law for the incorporation of cities and towns in the State of Oregon'; its general purpose being to provide for the incorporation of towns not then incorporated and to provide a general municipal charter for such towns. * * *"

In *State ex rel v. North Bend,* 171 Or 329, 137 P2d 607, supra, the court held it was unnecessary for a new municipal corporation under the 1893 act to adopt a charter, the act itself prescribing their powers.

Plaintiff attempts to distinguish these cases and to demonstrate their inapplicability on the ground that they were concerned with the Act of 1893 which specificially enumerated city powers while our grant of power is a "General Grant." However, in our opinion they are applicable in that they are addressed to the alleged necessity of a "charter" and authority that may be exercised under a general statute. The itemization of powers in the act of 1893 and the general grant under the Act of 1941 does not make decisions under the former inapplicable to the principle com-

mon to both, i.e., the authority conferred by a general act. Discussion of whether Oceanlake formally adopted a "charter" by the act of incorporation becomes academic.

As to Assignment of Error No. 1, we find authority existed for the enactment of the ordinance.

■ Assignment of Error No. 2. The court erred in holding ORS 221.916 gave the city authority to enact a revenue measure. It is argued that this statute (Subsection 7) is confined to regulation and control by way of license. That no revenue authority is conferred and that the Act of 1941 is designed for revenue purposes only and therefore not within the authority granted. ·

ORS 221.916 is part of the Act of 1893 and without application to cities not incorporated under that law. *Albany v. McGoldrick,* supra; *Colby v. City of Medford,* 85 Or 485, 167 P 487. No error.

■ Assignment of Error No. 3. The court erred in not holding the ordinance void as not uniform in its application to all similarly situated. The argument of unreasonable classification is answered by the term of the "Exception" exempting a business conducted incidental to and as a part of any general business ＊ ＊ ＊ for which a license has been issued hereunder. ＊ ＊ ＊" Plaintiff does not come within the exception, others do. The classification is reasonable and addressed to legislative discretion.

Further, under Section 21 of the ordinance, bakeries and bakery distributors are grouped together and the license is required of residents and non-residents alike. No error.

*Ideal Tea Co. v. Salem,* 77 Or 182, 150 P 852, relied on by plaintiff is to be distinguished from our case in

that it does not appear any license fee was imposed upon resident businesses but was exacted from non-resident peddlers. The ordinance there challenged was held discriminatory. Here resident businesses are subjected to payment of a license fee.

■ Assignment of Error No. 4. The court erred in finding plaintiff's operations in Oceanlake constituted "engaging in business" in the city. Plaintiff's business operations as set forth in the third amended complaint constituted "engaging in business." *Wittenberg et al v. Mutton et al,* 203 Or 438, 280 P2d 359. No error.

Summarized, our conclusions are these: Under Article XI, Section 2 of the Oregon Constitution, the legislature may enact general laws for the formation of corporations. Chapter 453, Laws of 1941, under which the city of Oceanlake is incorporated, is such general law. Section 5 of said act, codified as ORS 221.410, is a "general grant" of power and includes the authority to enact the ordinance in question. It is express. *City of Glendale v. Trondsen,* 48 Cal2d 93, 300 P2d 235; *Angell v. City of Toledo,* (Ohio Common Pleas), 88 NE2d 595; *State v. City of Duluth,* 134 Minn 355, 159 NW 792; *Paulsen v. Portland,* 149 US 30, 37 L Ed 637, 13 SCt 750.

Plaintiff is engaged in business in the city. The act does not violate Article I, Section 20 of the Oregon Constitution.

Affirmed.